UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TRINA MOORE,

                      Plaintiff,

v.

NEW YORK CITY TRANSIT AUTHORITY,

                      Defendant.

**MEMORANDUM AND ORDER**

16-CV-69 (LDH) (CLP)

---

LaSHANN DeARCY HALL, United States District Judge:

Trina Moore ("Plaintiff") brings the instant action against the New York City Transit Authority ("NYCTA") alleging claims for: (i) wage discrimination in violation of the Equal Pay Act ("EPA") and New York's Equal Pay Law ("EPL"); (ii) employment discrimination on the basis of race and gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"); and (iii) racial discrimination in violation of 42 U.S.C. § 1981. NYCTA moves pursuant to Rule 56 of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety.

**UNDISPUTED FACTS[1]**

Plaintiff is a Black female lawyer admitted to practice law in New York in 2001. (Pl.'s Resp. 56.1 Statement ("Resp. 56.1") ¶ 60, ECF No. 59.) The NYCTA employs roughly 100

---

[1] Unless otherwise indicated, the following undisputed facts are taken from the parties' statements of material facts and annexed exhibits pursuant to Local Rule 56.1. To the extent any fact is disputed, it is so indicated. Facts that are not contradicted by citations to admissible evidence are deemed admitted. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("[I]f the opposing party [ ] fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). "Plaintiffs who ignore their obligations under Local Rule 56.1 do so at their own peril." *Genova v. Cnty. of Nassau*, 851 F. App'x 241, 243 (2d Cir. 2021) That being said, both parties included argument in their respective 56.1 statements, which is expressly prohibited under this Court's Individual Rules. Specifically, Rule III.A.6(h) requires "[f]actual contentions that parties believe

lawyers who handle legal and administrative claims brought against the NYCTA. (*Id*. ¶ 1.) The lawyers and related support staff employed by the NYCTA constitute the Metropolitan Transportation Authority's ("MTA") Law Department. (*Id*. ¶ 2.) The MTA's Law Department is divided into several divisions, the largest of which is the Torts Division. (*Id*. ¶¶ 3–4.) The Torts Division handles personal injury and other tort claims brought against the NYCTA and other agencies operating under the broader MTA. (*Id*. ¶ 4.)

In 2011, a member of the MTA approached Plaintiff regarding a position in its Law Department. (*Id*. ¶ 59.) At that time, Plaintiff was working in the private sector as a civil litigator, had 10 years of experience, and was earning a salary of approximately $115,000. (*Id*. ¶¶ 60–61; Def.'s Reply 56.1 Statement ("Reply 56.1") ¶ 11, ECF No. 64.) Martin Schnabel, then-General Counsel, and other NYCTA executives interviewed Plaintiff for an Executive Agency Counsel ("EAC") position. (Resp. 56.1 ¶ 62.) Plaintiff was offered the EAC, Nonmanagerial, Grade A ("EAC-A") position at a salary of $105,000 annually. (*Id*. ¶ 73.) On November 28, 2011, Plaintiff accepted the offer and began working in the NYCTA Torts Division. (*Id*. ¶ 74.) At the time Plaintiff was hired, there were six lawyers in the Torts Division who also held the title of EAC-A and were paid an average salary of $94,377 annually. (Resp. 56.1 ¶ 68.)

Joseph Brown served as the NYCTA's Director of Human Resources ("HR") for the Law Department. (Reply 56.1 ¶¶ 6, 8.) Brown's responsibilities included facilitating compliance with HR policies regarding hires and promotions. (*Id*. ¶ 9.) Pursuant to the NYCTA's HR policy, the Law Department did not provide merit-based pay raises. (Resp. 56.1 ¶ 8.) Instead,

---

are undisputed by circumstantial evidence should be argued in memoranda." In utter disregard for this rule, the parties' 56.1 statements became a frustrating tit-for-tat unhelpful to the Court. Where argument appears in the parties' 56.1 statements, the Court disregards it.

general wage increases ("GWIs") were granted agency wide pursuant to the NYCTA's collective bargaining agreements with certain unions. (*Id.* ¶ 9.) GWIs were usually between two and three percent of the employee's current salary. (*Id.*) Lawyers in the Law Department were not represented by a union, and were not subject to any collective bargaining agreement. (*Id.*) However, the NYCTA typically gave lawyers and other non-union employees the same GWIs as those represented by a union. (*Id.* ¶ 10.)

The HR policy also provided for two types of promotions: (i) promotions that resulted from the posting of a Job Vacancy Notice ("JVN"); and (ii) promotions in place ("PIP"), which were available to employees who advanced within the same or adjacent titles. (*Id.* ¶¶ 12, 18.) Both JVNs and PIPs would lead to a salary increase of 10 percent or an increase to the minimum salary range for the respective position. (*Id.* ¶¶ 13, 23.)

In early 2013, Schnabel began developing a new salary structure (the "Salary Plan") in order to make Law Department lawyers' salaries more competitive. (*Id.* ¶ 45.) The final version of the Salary Plan set forth target salary levels for Law Department lawyers based upon their respective bar admission dates. (*Id.* ¶ 51.) Thus, the key factor in setting a lawyer's salary was the number of years the lawyer was admitted to the bar. (*Id.* ¶ 52.) In addition to setting salary targets to be used for future hires, the Salary Plan also recommended adjusting the salaries of current Law Department lawyers who were performing satisfactorily. (*Id.* ¶ 54.) The Salary Plan's target for lawyers with 10 years of bar admission was $100,000 annually, and the target for lawyers with 15 years of bar admission was $115,000 annually. (*See* Renee L. Cyr. Declaration ("Cyr. Decl."), Ex. L ("Aug. 2013 Pinnock Memo") at 3, ECF No. 55-13.)

On November 5, 2013, Schnabel sent the HR Department a list of attorneys who were eligible for up to a seven percent salary adjustment pursuant to the Salary Plan. (Resp. 56.1

3

¶ 84.)  At this time, Plaintiff was 12 years post bar admission and was paid a salary of $109,200.  (*Id.* ¶¶ 86, 91.)  Before any salary adjustments, Plaintiff's salary was higher than that of any other lawyer in the Torts Division who had been admitted to the bar the same year as her, 2001.  (*Id.* ¶ 89.)  Thus, Plaintiff did not receive a salary adjustment at that time.  (*Id.* ¶ 88.)  Plaintiff was told, however, that she would be part of the "second wave" of salary adjustments.  (Reply 56.1 ¶ 23.)

In July 2015, Plaintiff learned that some of her colleagues had received raises and promotions.  (Resp. 56.1 ¶ 105.)  Plaintiff approached her superiors and HR personnel inquiring as to why she had not received a raise.  (*Id.*)  HR liaisons Helen Smart and Theresa Murphy explained to Plaintiff that some of her colleagues' raises resulted from the Salary Plan and that Plaintiff's salary was too high to receive a salary adjustment.  (*Id.* ¶ 106.)  Murphy told Plaintiff that she was making more than most EAC-As and thus did not qualify for a raise pursuant to the Salary Plan.  (*See* Cyr. Decl., Ex. C ("Murphy Dep.") at 62:19–63:8, ECF No. 55-3; *see also* Resp. 56.1 ¶ 107.)

On July 15, 2015, Plaintiff spoke to her supervisor, Lisa Hodes-Urbont, and informed her she wanted a PIP to EAC Grade B ("EAC-B").  (Resp. 56.1 ¶ 129.)  Hodes-Urbont responded that she would submit Plaintiff's name for a PIP and asked Plaintiff to "prepare language" for the request.  (*Id.* ¶ 130.)  Plaintiff was also informed that both Lawrence Heisler (Head of the Torts Division) and Jim Henley (General Counsel) would need to approve the request and that the approval would not be immediate.  (*Id.* ¶ 133.)  That same day, Plaintiff provided the draft language to Hodes-Urbont, who in turn sent Plaintiff's PIP request to Heisler on August 25, 2015.  (*Id.* ¶¶ 131, 134.)

Hodes-Urbont re-sent Plaintiff's PIP request to Heisler on October 23, 2015, May 25, 2016, June 7, 2016, and again on August 5, 2016. (*Id.* ¶ 141.) On November 4, 2016, Heisler's deputy, Gail Goode, sent an updated version of Plaintiff's PIP request to Henley. (*Id.* ¶ 142.) Henley acted on some PIP requests for other attorneys on or about December 6, 2016, and his approved requests were sent to HR for processing. (*Id.* ¶ 143.) In February 2017, Plaintiff was promoted from EAC-A to EAC-B, with a corresponding $11,588 (ten percent) salary increase. (*Id.* ¶ 144.) The increase in pay was made retroactive to December 2016. (*Id.* ¶ 145.) At least two other attorneys received PIPs in December 2016. (*Id.* ¶ 146.) In addition, between November 2013, when salary adjustments were made pursuant to the Salary Plan, and December 2016, four non-managerial attorneys received PIPs: David Berkowitz, Elias Falcon, Gregory George, and Melissa Wu. (*Id.* ¶ 111.) Before their respective promotions, each of the employees earned less than Plaintiff. (*Id.* ¶ 115.) Plaintiff resigned from NYCTA effective April 14, 2017, to pursue a position as a federal administrative law judge. (*Id.* ¶ 147.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *See Celotex Corp.*, 477 U.S. at 325. Once the movants meet their initial

5

burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in her favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts, *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

## DISCUSSION

### I. Wage Discrimination Under the EPA

The EPA prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). To establish a *prima facie* case of wage discrimination under the EPA, a plaintiff must demonstrate that: "(1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999) (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995)). A plaintiff need not adduce evidence of her employer's discriminatory intent to prevail on her claim—"[t]hus, a *prima facie* showing gives rise to a presumption of discrimination." *Id.* at 136.[2] NYCTA argues principally that Plaintiff

---

[2] Once a plaintiff has established a *prima facie* case, "the statute affords the employer four affirmative defenses and the burden of persuasion shifts to the employer to prove the disparity is justified by one of these defenses." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999). The affirmative defenses are: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). "Following such proof by the employer, the plaintiff may counter the employer's affirmative defense by producing evidence that the reasons the defendant seeks to advance are actually a pretext for sex discrimination." *Belfi*, 191 F.3d at 136. "The plaintiff shoulders the ultimate burden of proving that the employer's articulated reason was pretextual." *Id.* at 135.

has failed to make a *prima facie* showing of discrimination. (Def.'s Mem. L. Supp. Summ. J. ("Def.'s Mem.") at 12–14, ECF No. 54.) The Court agrees.

With respect to the first element, Plaintiff states baldly that "Moore established that [NYCTA] paid male employees more than female employees." (Pl.'s Mem. L. Opp'n Summ. J. ("Pl.'s Opp'n") at 10, ECF No. 60.) The Court would expect that, at this point, Plaintiff might attempt to set out—with evidence—exactly how such a pay disparity was "established." She does not, at least not in any meaningful way. Plaintiff relies on the "fact" (really, counsel's argument because the sentence lacks a citation) that EAC-A lawyers were paid less than higher ranked EAC-B lawyers. (*Id*.) She does not, however, contend that there was a gender divide between these two groups of lawyers. (*See* Pl.'s Opp'n at 6 (noting that "many" EAC-B attorneys were male).) Nor could she. The evidence adduced by NYCTA—that Plaintiff does not controvert—shows that there were women who worked as EAC-A lawyers and as EAC-B lawyers. (Cyr Decl., Exs. Z, AA, and BB, ECF Nos. 55-27 to 55-29.) So, even if Plaintiff had adduced evidence supporting the assertion that these two groups of lawyers were paid differently, this purported fact could not, in and of itself, support an EPA claim.[3] Plaintiff would need to establish that NYCTA paid members of the opposite sex more money, not two different categories of lawyers. She has not done so.

---

[3] Plaintiff ostensibly asserts that HR Manager Joseph Brown admitted to the purported pay disparity. (Def.'s Reply 56.1 ¶ 22.) Specifically, Plaintiff maintains that at a meeting with Brown in November 2015, Brown indicated that "they always paid women less than men." (Laura D. Barbieri Declaration ("Barbieri Decl."), Ex. 1 at 254:13-15, ECF No. 57-1.) Plaintiff memorialized the substance of the November 2015 meeting with Brown in a memo. (*See* Cyr. Decl., Ex. CC at P028, ECF No. 55-30.) Curiously absent from that memo is any mention that Mr. Brown made such a statement. (*See id.*) And, Mr. Brown disputes that Plaintiff made any reference to feeling discriminated against as a woman or as a black woman at their meeting. (*See* Cyr. Decl, Ex. A at 81–96, ECF No. 55-1.) In any event, the documentary evidence adduced by NYCTA—the only evidence before the Court—wholly undermines any contention that NYCTA "always paid women less." (*See* Exs. Z, AA, BB, Cyr Decl., ECF Nos. 55-27 to 55-29.) These documents show that women were on many occasions paid more than men. (*Id.*)

7

That said, with respect to the last two elements of an EPA claim, Plaintiff's efforts to liken EAC-A and EAC-B lawyers fails. Again, to satisfy these elements, Plaintiff must establish that higher-paid men perform equal work on jobs requiring equal skill, effort, and responsibility; and that the jobs are performed under similar working conditions. "While the equal work inquiry does not demand evidence that a plaintiff's job is identical to a higher-paid position, the standard is nonetheless demanding, requiring evidence that the jobs compared are substantially equal." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 255 (2d Cir. 2014) (internal quotation marks and citation omitted). Indeed, "a plaintiff must establish that the jobs compared entail common duties or content, and do not simply overlap in titles or classifications." *Id*. In determining whether a plaintiff has met the "demanding" standard to show that positions require similar skill, effort, and responsibility, the Court must focus upon "the congruity and equality of actual job content," and "not job title or description." *Id*. As such, "broad generalizations drawn from job titles, classifications, or divisions, and conclusory assertions of . . . discrimination[] cannot suffice." *Id.* at 256. That is all Plaintiff has provided the Court here.

Other than conclusory arguments regurgitating legal standards, Plaintiff has failed to establish through evidence that the jobs performed by EAC-A and EAC-B lawyers were substantially equal. On this point, there is no fact in dispute because there is no fact asserted. At most, Plaintiff states in her brief that EAC-A lawyers and EAC-B lawyers perform the same work, "i.e, trial work." (Pl.'s Opp'n at 12.) Plaintiff's argument proves too much. That each class of lawyers performs "trial work" is not sufficient in and of itself to establish that EAC-A lawyers perform substantially equal work to EAC-B lawyers. The generic category of "trial work" does not speak to the types of cases, their complexity, length or the lawyer's respective role at trial. Certainly, even on a single trial team, all lawyers are not equal. While a seasoned

8

partner and a third-year associate may each, for example, handle pleadings, discovery matters, motions, conferences, and go to trial, one would be hard pressed to demonstrate that the seasoned partner and third year associate perform equal work on jobs requiring equal skill, effort, and responsibility.  Absent more, Plaintiff's conclusory assertions—concerning whether these jobs required equal skill, effort, and responsibility and whether they were performed under similar working conditions—do not establish the requisite equity to support an EPA claim.

Tellingly, Plaintiff did not provide the Court with comparators against whom the Court might test her claim.  *See, e.g.*, *McCullough v. Xerox Corp.*, 224 F. Supp. 3d 193, 198 (W.D.N.Y. 2016) (granting summary judgment for EPA defendant where "no reasonable trier of fact could find that plaintiff's alleged comparators . . . performed jobs that were substantially similar to plaintiff's").  NYCTA assumed in its opening memorandum that Plaintiff would put forth Samuel Cheng, Elias Falcon, Gregory George, and Adam Greenstein as purported comparators. (Def.'s Mem. at 12.)  Yet, with the exception of Cheng, nowhere in the six pages Plaintiff dedicates to the EPA claim in her opposition does Plaintiff even mention their names.  Rather, in the background section of her opposition, Plaintiff states in passing that Greenstein, Falcon, Cheng, and George were all EAC-B attorneys, doing the same work as Plaintiff, in the same office, and performing the same duties.  (*See* Pl.'s Opp'n at 8.)  That conclusory assertion is supported by a single citation to Plaintiff's deposition.  (*See id.*)  But, a review of that testimony does not support Plaintiff's assertion.  Indeed, the citation is misleading, to put it mildly. Plaintiff testified that she did not know where any of these individuals went to school, their titles, their qualifications, or anything about them other than "that they were white male and got a seven percent salary increase."  (Laura D. Barbieri Declaration ("Barbieri Decl."), Ex. 1 at 150:1–155:15, ECF No. 57-1.)  Aside from that, the only specific reference to any potential

9

comparator is Plaintiff's almost passing reference to Cheng.  (*See* Pl.'s Opp'n at 11–12.)  Without evidentiary support, Plaintiff states Cheng held a higher title than her even though he purportedly performed the same work.  (*See id.*)  This paltry assertion is insufficient to meet her burden.  *See Jaafari v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 10-CV-4060, 2011 WL 13128204, at *8 (S.D.N.Y. Sept. 2, 2011) (finding that plaintiff failed to meet *prima facie* burden under the EPA where there were no allegations that plaintiff and his comparator had substantially equal responsibility).

In sum, Plaintiff fails altogether to adduce evidence that might allow a reasonable juror to find in her favor on her EPA claim.  NYCTA's motion for summary judgment is granted on this ground.

## II.     Employment Discrimination Under Title VII and § 1981

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex . . . ."  42 U.S.C. § 2000e-2(a)(1).  At the summary-judgment stage "Title VII claims are ordinarily analyzed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green* . . . and its progeny."  *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009) (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008)).  The same framework applies to discrimination claims brought under § 1981.  *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) ("Title VII claims and . . . claims for race . . . discrimination under Sections 1981 and 1983 are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green* . . . .").  Under *McDonnell Douglas*, "a plaintiff must first establish a *prima facie* case of discrimination by showing that: '(1) she is a member of a protected class; (2) she is

10

qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (citation omitted). Similarly, to establish a *prima facie* case of discriminatory failure to promote, a plaintiff must demonstrate that: "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Aulicino*, 580 F.3d at 80 (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004)). "In all cases, for the plaintiff to avoid an adverse judgment, there must be proof that the plaintiff 'was rejected under circumstances which give rise to an inference of unlawful discrimination.'" *Id.* (citation omitted). Here, NYCTA argues that Plaintiff has not adduced any evidence of circumstances giving rise to an inference of discrimination. (Def.'s Mem. at 14.) The Court agrees.

A plaintiff may establish either "facts that directly show discrimination," or alternatively, she can establish discriminatory intent indirectly. *Vega*, 801 F.3d at 87. "It is well-settled that an inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to . . . the more favorable treatment of employees not in the protected group[] or the sequence of events leadings to the plaintiff's [adverse employment action]." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)). To prove that NYCTA subjected Plaintiff to disparate treatment, Plaintiff must show that she was "similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (quotation marks and citation omitted).

In support of her discrimination claims[4], Plaintiff argues that "non-Blacks and men" received raises and promotions, while she was repeatedly denied the same raises and promotions. (Pl.'s Opp'n at 17–19.)  Incredibly, Plaintiff does not identify these non-Black colleagues by name or even title.  Only upon a searching review of Plaintiff's evidence did the Court conclude that Plaintiff was referring to George, Cheng, Greenstein and Falcon.  Specifically, Plaintiff testified that, in January 2014, she learned that "Greg George, Samuel Cheng, Adam Greenstein, and Elias Falcon . . . received 7% salary increases despite having been hired around the same time as [Plaintiff] and having similar education and qualifications as [Plaintiff]."  (Moore Decl. ¶ 28, ECF No. 58.)  Then, around June 2015, Plaintiff became aware that these same individuals had been promoted and received a 10% salary increase.  (*See id*. ¶ 43.)  Plaintiff stated that she did not receive these raises or promotions even though she "did the same work" and "was highly successful trying cases."  (*Id*. ¶ 28.)  Plaintiff also contends that she was given "numerous, inconsistent explanations" for NYCTA's failure to promote her or give her raises.  (*Id*. ¶ 48.)  For this reason, Plaintiff believes she has demonstrated the requisite intent to discriminate.  She has not.

Plaintiff has not adduced any evidence supporting her claim that George, Cheng, Greenstein, or Falcon were similarly situated to her in all material respects.  Plaintiff testified that she does not know when her comparators were hired, what their educational or professional experience was prior to being hired, or when they passed the bar exam.  (*See* Barbieri Decl., Ex.

---

[4] Plaintiff's argument opposing the dismissal of her discrimination claim is devoid of any citations to the parties' 56.1 statements.  *See, e.g.*, *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) ("The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts or defeat the motion through mere speculation or conjecture." (citation omitted)).  This failure is frustrating to the Court, and deprives both the Court and NYCTA an opportunity to controvert the evidence underlying their arguments.  In any event, having now undertaken the arduous task of matching the assertions made in Plaintiff's opposition to the facts set out in the 56.1 statements, as set out above, it is clear that Plaintiff has not adduced any evidence supporting her claim.

A at 154:18–155:15, ECF No. 57-1.)  Plaintiff's failure to adduce evidence in this regard is compounded by the uncontroverted evidence that, among the attorneys who received salary adjustments, 11 were men, 19 were women, and 10 were Black.  (*See* Resp. 56.1 ¶¶ 90, 100.)  In sum, Plaintiff has failed to demonstrate that she was in fact similarly situated in material respects to her non-Black, male comparators.

In a final effort to demonstrate discriminatory intent, Plaintiff points to a comment made by HR Director Brown that NYCTA "had a pattern of compensating female employees less than male employees for comparable work."  (Pl.'s Opp'n at 20.)  Without more, "stray remarks, even if made by a decision maker, do not constitute sufficient evidence [to support] a case of employment discrimination."  *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998).  Plaintiff's argument that Brown's comment gives rise to an inference of discrimination is both factually and legally unsupported.  (*See* Pl.'s Opp'n at 20–21.)  Instead, the undisputed record demonstrates that several women in the Torts Division were compensated as well as their male counterparts.  (*See* Resp. 56.1 ¶¶ 90, 95, 100.)  Brown's comment, on its own, fails to raise an inference of discrimination sufficient to meet Plaintiff's *prima facie* burden.  Plaintiff's Title VII claim and § 1981 claim must be dismissed.

### III.     Supplemental Jurisdiction

A district court "'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'"  *Adam Senese v. Longwood Cent. Sch. Dist.*, 330 F. Supp. 3d 745, 770 (E.D.N.Y. 2018) (quoting 28 U.S.C. § 1367(c)(3)).  The Court must balance the "values of judicial economy, convenience, fairness, and comity."  *Id*. (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  Once all federal claims have been dismissed, "the balance of factors will . . . point toward declining jurisdiction over the

remaining state-law claims." *Id.* (quotation marks and citation omitted).  Here, because all of Plaintiff's federal claims have been dismissed, the Court declines jurisdiction over Plaintiff's claims under New York law.

## CONCLUSION

For the foregoing reasons, NYCTA's motion for summary judgment is GRANTED as to Plaintiff's claims brought pursuant to the EPA, Title VII, and § 1981.

                                          SO ORDERED.

Dated: Brooklyn, New York                /s/ LDH
       March 28, 2023                   LaSHANN DeARCY HALL
                                          United States District Judge